# EXHIBIT C

Agreement No. AGR2019041707

## PURIFICATION & SCALE-UP AGREEMENT BETWEEN

### XTTRIUM LABORATORIES, INC.
### (MT PROSPECT, IL, USA)

### AND

### BAJAJ HEALTHCARE, LTD.
### (VADODARA, GUJARAT, INDIA)

Agreement No. AGR2019041707

This Agreement is entered into by XTTRIUM LABORATORIES, INC. ("XTTRIUM") of Mt. Prospect, Illinois, the United States of America and BAJAJ HEALTHCARE LTD. of Vadodara, Gujarat, The Republic of India ("BAJAJ") (individually "Party," collectively "Parties").

XTTRIUM desires to retain BAJAJ to develop a scaled-up commercial Purification & Scale-up Process ("Purification & Scale-up Process") suitable for commercialization for Scaled Chlorohexidine Gluconate (the "Product") developed by XTTRIUM.

The Purification and Scale-up Process will include the following goals ("Goals") mutually agreed upon by the Parties:
    i)     obtainable starting materials at a reasonable cost;
    ii)     high productivity; and
    iii)     improved efficiency over existing methods.

### BAJAJ'S OBLIGATIONS

BAJAJ agrees to the following in exchange for XTTRIUM's obligations described herein:

    A.     BAJAJ shall assign and transfer to XTTRIUM all Intellectual Property Rights for the US as described herein;

    B.     BAJAJ shall exercise good faith and due diligence in achieving the Goals for the Product and Purification & Scale-up Process based on the mutually agreed specifications provided by Xttrium to Bajaj; however, Bajaj makes no warranty or guarantee that the development will result in the achievement of the specifications or the Goal(s);

    C.     BAJAJ shall, for the term of this Agreement, provide XTTRIUM with updates quarterly on its progress in achieving the Goals; and

    D.     BAJAJ shall timely execute the Nondisclosure Agreement attached herein as Exhibit A.

## XTTRIUM'S OBLIGATIONS

XTTRIUM agrees to the following in exchange for BAJAJ's obligations described herein:

A. XTTRIUM shall obtain the Purification & Scale-up Process for the Product exclusively from BAJAJ in exchange for the costs outlined in Exhibit B; and shall continue to pay Bajaj during the development.

## INTELLECTUAL PROPERTY TRANSFER

**INTELLECTUAL PROPERTY RIGHTS.** Intellectual Property Rights means all rights in and to US (i) patents, patent disclosures and inventions (whether patentable or not), (ii) trademarks, service marks, trade dress, trade names, logos, corporate names and domain names, and other designations of source or origin, together with the goodwill symbolized by any of the foregoing, (iii) copyrights and copyrightable works (including computer programs), and rights in data and databases, (iv) trade secrets, know-how and other confidential information, and (v) all other intellectual property rights, in each case whether registered or unregistered and including all registrations and applications for, and renewals or extensions of, such rights, and all similar or equivalent rights or forms of protection in the USA. In the interest of clarity, any intellectual property for ex-USA shall be exclusively owned by Bajaj. Bajaj's rights to any intellectual property shall survive Termination of this Agreement.

XTTRIUM shall have sole ownership of all Intellectual Property Rights in the USA arising from this Agreement concerning the Product, Purification & Scale-up Process owned or developed under this Agreement. No part of this Agreement shall be construed to apply to any Intellectual Property Rights owned by either Party prior to the execution of this Agreement or to any Intellectual Property Rights applicable to products or services other than the Product described herein. Intellectual Property which BAJAJ is assigning includes materials, methods, steps and use, and labeling of the Purification & Scale-up Process. In the interest of clarity, any Intellectual Property Bajaj owns or has rights to prior to the execution of this Agreement shall remain with Bajaj. Bajaj's rights to any intellectual property shall survive Termination of this Agreement.

**TRADEMARKS.** XTTRIUM shall have the sole right to prepare, file, prosecute and maintain trademark applications or registrations with respect to the Product and Purification & Scale-up Process. All such applications and registrations shall be at XTTRIUM's expense. XTTRIUM shall retain ownership of these applications and registrations throughout the term of this Agreement and thereafter.

BAJAJ shall from time to time, as XTTRIUM may reasonably request, execute and deliver to XTTRIUM any reasonably requested documents of transfer or assignment relating to the Product or Purification & Scale-up Process and cooperate fully in obtaining whatever approval or product protection that XTTRIUM may reasonably deem desirable or appropriate, in return for appropriate additional compensation. Xttrium shall pay for such documentation in advance; a failure to pay in advance relieves Bajaj from any obligation to to provide such documentation.

Case: 1:23-cv-03829 Document #: 1-3 Filed: 06/16/23 Page 4 of 9 PageID #:40

**PATENTS.** XTTRIUM shall have the sole right to prepare, file, prosecute and maintain patent applications or patents throughout the world with respect to the Product and Purification & Scale-up Process. All such applications and prosecution shall be at XTTRIUM's expense. XTTRIUM shall retain ownership of these applications and patents throughout the term of this Agreement and thereafter. BAJAJ shall from time to time, as XTTRIUM may reasonably request, execute and deliver to XTTRIUM any reasonably requested documents of transfer or assignment relating to the Product and Purification & Scale-up Process and cooperate fully in obtaining whatever approval or product protection that XTTRIUM may reasonably deem desirable or appropriate, in return for appropriate additional compensation. For any pending patent applications or issued patents that exist ex-USA, then Bajaj shall have a royalty-free, non-exclusive, fully paid up license to such patent applications or patents. Bajaj's rights to any intellectual property shall survive Termination of this Agreement.

**ASSIGNMENT.** To the extent that the foregoing does not apply, BAJAJ hereby irrevocably assigns to XTTRIUM, and its successors and assigns, for no additional consideration, BAJAJ's entire right, title and interest in and to all Intellectual Property Rights for the US territory only for the Product and Purification & Scale-up Process therein, including the right to sue, counterclaim and recover for all past, present and future infringement, misappropriation or dilution thereof, and all rights corresponding thereto in the US.

**FURTHER ASSURANCES.**

XTTRIUM assumes complete responsibility for conducting adequate due diligence on the Product and Purification & Scale-up Process to confirm that the Product and Purification & Scale-up Process will not infringe on the rights of any third parties. If the Product or Purification & Scale-up Process infringes the rights of any third parties, XTTRIUM assumes responsibility and liability and will indemnify, defend and hold harmless BAJAJ and its directors, officers, employees, successors and assigns and suppliers from and against any claims, demands, lawsuits, losses, damages, liabilities, costs and expenses (including reasonable attorneys' fees and disbursements), judgments and settlement of every kind that may be made by any third party arising out of or relating to any claim that the specifications, designs, processes or requirements for the Product and/or Purification & Scale-up Process infringes or misappropriates any third party Intellectual Property Rights as defined herein, regardless of who provided such items.

## APPROVAL BY XTTRIUM

XTTRIUM will approve all specifications and final steps in the Purification & Scale-up Process to ensure they substantially meet the Goals as agreed to herein.

In addition, XTTRIUM will provide BAJAJ with certain necessary specifications to ensure compliance with all applicable laws and regulations governing the sale and use of the Product and Purification & Scale-up Process, including, but not limited to applicable laws of import into and export out of the United States.

XTTRIUM reserves the right: i) to independently test or have tested Purification & Scale-up Process as designed by BAJAJ to ensure that it substantially meets the Goals as agreed to herein; ii) determine that the Purification & Scale-up Process is reasonably suitable for its intended use; and, iii) the Purification & Scale-up Process and its steps are in compliance with all GMP, FDA, and Customs laws and regulations governing the sale and use of the Product and Purification & Scale-up Process, including, but not limited to applicable laws of import into and export out of the United States which were provided to BAJAJ as indicated above.

## TERM

This Agreement shall last from the date hereof until two (2) years hence. Following the initial one-year term, the Parties agree that the term shall renew automatically for an additional year on the anniversary date unless there is written notification from either Party, 90 days prior to the anniversary date. If Xttrium fails to pay the required amounts by the required deadlines, then the Agreement is deemed terminated. Upon termination of this Agreement for any reason, then any development that Bajaj has made shall revert back to Bajaj.

## COSTS AND CONDITIONS

The costs and conditions attached hereto as Exhibit B and any other Exhibit are incorporated into this Agreement as if set forth herein. Any additional, contrary or different terms contained in other communication or attempt to modify or alter this Agreement is rejected unless such term has been fully approved in writing by an officer of each party. This Agreement including and together with any related exhibits and schedules constitute the entire agreement of the parties with respect to the subject matter contained herein and supersedes all prior and contemporaneous understandings, agreements, representations and warranties with respect to the subject matter. If XTTRIUM fails to pay, the any development that Bajaj has made shall revert back to Bajaj.

## PUBLICITY

No public statement or disclosure to third parties regarding this Agreement or other arrangements being considered or conducted hereunder shall be made by or on behalf of a Party without the prior written consent of the other Party. However, disclosure as may be required by the relevant laws/acts of the government of the Republic of India shall be exempt from this above provision, with prior notice to XTTRIUM and/or BAJAJ, as the case may be.

Purification & Scale-up Agreement  
Agreement No. AGR2019041707

5

## CHOICE OF LAW AND JURISDICTION

For any dispute resolution brought by Xttrium against Bajaj, then the governing law and the location of the dispute resolution of the contract shall be the substantive law of the State of Gujarat, and of the Republic of India, without regard to principles governing conflicts of laws. Xttrium agrees to personal and subject matter jurisdiction in the courts of Gujurat. For any dispute resolution brought by Bajaj against Xttrium, then the governing law and the location of the dispute resolution of the contract shall be the substantive law of the State of Illinois, without regard to principles of governing conflicts of laws. Xttrium agrees to personal and subject matter jurisdiction in the courts of Illinois (State or Federal). Xttrium also agrees that in any action brought by Bajaj against Xttrium that should Bajaj prevail, Bajaj will be entitled to reasonable attorney fees and costs, including any enhanced damages, pre- and post- judgment interest, that may be available.

## SURVIVAL

Parties agree that in the event of XTTRIUM's change of ownership or its transfer or license of the Intellectual Property Rights described herein, this Agreement will be binding on any successor owner, transferee or licensee and such successor owner transferee and licensee will be required to comply with XTTRIUM's obligations hereunder including, without limitation, purchasing the Purification & Scale-up Process from BAJAJ.

**This agreement and its exhibits understood and agreed to by:**

**BAJAJ HEALTHCARE, LTD.**

By: _____

Anil Jain  
Block No. 588, Savli-Karachia Road  
Tal. Savli, Dist. Vadodara  
IN - 391 776  
Gothada, Gujarat  
The Republic of India  
Date: 24/06/2019

**XTTRIUM LABORATORIES, INC.**

By: _____

Madeleine Creevy  
1200 East Business Center Drive  
Mount Prospect, Illinois 60056  
The United States of America

Date: 7/2/19

**Purification & Scale-up Agreement**   6
**Agreement No. AGR2019041707**

## EXHIBIT A

## NONDISCLOSURE AGREEMENT

In connection with the Purification & Scale-up Agreement, described under Agreement No. AGR2019041707, **XTTRIUM LABORATORIES,** and **BAJAJ HEALTHCARE, LTD. (of Vadodara, Gujarat, India)** have disclosed or may disclose to each other certain business or technical information relating to each party and/or their products and/or has provided the other party or may provide the other party with product samples or prototypes ("Proprietary Information").

In consideration of any disclosure of information, provision of product samples or prototypes and any negotiations concerning the Purification & Scale-up Agreement, described under Agreement No. AGR2019041707, the undersigned agree as follows:

1. Each party will hold in confidence and not use (except to evaluate the proposed business relationship) or disclose any Proprietary Information except information it can document (a) is in the public domain through no fault of theirs, (b) was properly known to it, without restriction, prior to disclosure by the other party, or (c) was properly disclosed by another person without restriction. In addition, neither party will copy, alter, modify, reverse engineer, or attempt to derive the composition or underlying information of any Proprietary Information. Each party acknowledges and agrees that, as between them, all Proprietary Information and all copies thereof are owned solely by that party which has disclosed the Proprietary Information.

2. If either party decides not to proceed with the proposed business relationship or if asked by the other party, it will immediately cease all use of and return all Proprietary Information and all copies and extracts to the other party.

3. Each party will immediately notify the other party of any unauthorized release of Proprietary Information.

4. Each party acknowledges and agrees that for a period of three (3) years from the date this Nondisclosure Agreement is accepted, each party will maintain all Proprietary Information in confidence and will refrain from using any such Proprietary Information for any purpose, unless so authorized in writing by the other party.

5. Each party understands that this Nondisclosure Agreement does not obligate the other party to disclose any information or provide any data, or negotiate or enter into any agreement or relationship with it.

6. **BAJAJ HEALTHCARE, LTD.** shall be entitled to subcontract any part of the development to third parties/party and shall be responsible for the observance of this Nondisclosure Agreement by such third parties/party. Any subcontractor is not privy to the Agreement.

7. This Nondisclosure Agreement shall be governed and construed under the laws of the State of Gujarat and the Republic of India without regard to conflict of laws provisions thereof. The sole jurisdiction and venue for actions related to the subject matter hereof shall be the State of Gujarat and the Republic of India. Each party consents to the jurisdiction of such courts.

Purification & Scale-up Agreement
Agreement No. AGR2019041707

**Purification & Scale-up Agreement**          8
**Agreement No. AGR2019041707**

# EXHIBIT B

## COSTS & PAYMENTS BETWEEN XTTRIUM & BAJAJ HEALTHCARE, LTD.

The costs of this project will be distributed as follows:

a. An initial non-refundable payment is to be paid via invoice upon the signing and execution of this Agreement, the issuance of an invoice thereof is to be issued from BAJAJ to XTTRIUM. Following the receipt of the payment to BAJAJ, all intellectual property and other ownership rights as described within this Agreement will be transferred to XTTRIUM.

b. Remittances by XTTRIUM to BAJAJ shall be on an invoice basis. All invoices shall All information, including account information and agreed-to terms shall be included on each invoice. All information is subject to change from invoice to invoice.

c. After the initial payment, then XTTRIUM shall pay to Bajaj for Bajaj's expenses incurred. Expenses (including, but not limited to, hard costs, soft costs, labor expenses, laboratory costs, analytical costs) generated by this project shall be calculated by BAJAJ every quarter-year, on or around March 31st, June 30th, September 30th, and December 31st, and invoiced to XTTRIUM at a NET 30 basis. All payments shall be in US dollars and payable to the entity on the Invoice.

d. If there are any delays on the remittance of BAJAJ's invoices by XTTRIUM, BAJAJ shall have the right to slow or stop any and all work on and/or towards both or either the Goals and BAJAJ's obligations, as detailed within this agreement, solely at BAJAJ's discretion, for any amount of time, no amount of time, or indefinitely. Invoices are payable on receipt. In the event that any invoice is not fully paid within 15 days, then Bajaj retains the unilateral right to terminate the Agreement immediately. In the event of such termination, all development rights and intellectual property shall remain with Bajaj or shall revert back to Bajaj.